UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

AMANDA LANDESS,                          )
                                         )
                Plaintiff,               )
                                         )
v.                                       )          No. 4:21-CV-38-DCP
                                         )
KILOLO KIJAKAZI,[1]                      )
Acting Commissioner of Social Security,  )
                                         )
                Defendant.               )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 23]. Now before the Court are

Plaintiff's Motion for Judgment on the Administrative Record [Doc. 17] and Defendant's Motion

for Summary Judgment [Doc. 20]. Plaintiff filed a reply brief as well [Doc. 22]. Amanda Landess

("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"),

the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow,

the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On April 15, 2019, Plaintiff filed an application for disability insurance benefits and

supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42

U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on March 1,

2019 [Tr. 10, 85–86, 184–92]. After her application was denied initially and upon reconsideration,

---

[1]    Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

Plaintiff requested a hearing before an ALJ [*Id.* at 59–118, 121–36]. A telephonic hearing was held on July 14, 2020 [*Id.* at 36–58]. On August 25, 2020, the ALJ found that Plaintiff was not disabled [*Id.* at 10–20]. The Appeals Council denied Plaintiff's request for review on July 8, 2021 [*id.* at 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on August 27, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since March 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: depression, anxiety, psychogenic seizure disorder, bipolar disorder, alcohol use disorder, and migraines (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except; no ladders, ropes, or scaffolds or hazards such as moving machinery or unprotected heights; no driving; all posturals are limited to occasional; no work at a production rate pace; no work with the public; and infrequent changes to routine and work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 28, 1983 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 13–20].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

3

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

4

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A),  1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) & 416.920(a)(4), -(e). RFC is the most a claimant can do despite her limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff raises three arguments on appeal. She contends the ALJ erred in failing to (1) properly consider or account for her migraine headaches or seizure episodes despite the record supporting the frequency and severity of these impairments; (2) consider or evaluate her obesity in accordance with Social Security Ruling 19-2p; and (3) sufficiently account for her low back pain and severe degenerative disc disease of the lumbar spine. For those reasons, Plaintiff requests that the Court reverse the Commissioner's final decision and enter an immediate award of benefits for her or, alternatively, remand this matter for further consideration by a new ALJ. The Commissioner maintains that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's (1) evaluation of Plaintiff's migraines and psychogenic seizures; (2) final RFC finding, notwithstanding Plaintiff's obesity; and (3) evaluation of the severity of Plaintiff's low back pain.

For the reasons below, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's migraines and psychogenic seizures. Furthermore, the ALJ appropriately

6

formulated Plaintiff's RFC despite not specifically discussing her obesity, and even if the ALJ did err by not explicitly discussing Plaintiff's obesity, remand is not warranted because Plaintiff has failed to demonstrate how her obesity required more limitations than what was provided in the RFC or that the RFC is inconsistent with the evidence in the record. Finally, the ALJ's evaluation of Plaintiff's low back pain is also supported by substantial evidence. For these reasons, the Court affirms the ALJ's decision and denies Plaintiff's request for relief.

A.      The ALJ's Consideration of Plaintiff's Migraines and Psychogenic Seizures

Plaintiff contends the ALJ failed to properly consider or account for her migraine headaches or seizure episodes in the decision. She argues that the record includes "extensive documentation" of the severity and frequency of these impairments [Doc. 18 p. 10]. She further claims the ALJ mischaracterized and/or misrepresented the evidence relating to her migraine headaches and seizure episodes [*Id.* at 10–11]. Plaintiff submits the ALJ's decision therefore lacks the support of substantial evidence [*Id.* at 11].

As to her migraine headaches, Plaintiff notes that she had been treated by a neurologist since at least October 2018, her migraines have persisted despite receiving ongoing specialized treatment and medications, and she has consistently and continually been diagnosed with intractable migraine headaches [*Id.* (citing Tr. 1195–1247)]. She also notes that she was seen for her migraine headaches in January 2020, at which time she reported having daily headaches and severe migraines ten days per month and seizure episodes about once every two weeks [*Id.* (citing Tr. 1229–34)]. In February and May 2020, Plaintiff underwent Botox injections for her migraine headaches, which she claims was an aggressive treatment measure taken after more conservative treatment methods and medications were unsuccessful [*Id.* (citing Tr. 1230)]. She states that, despite receiving aggressive treatment for her migraine headaches and even though she reported

7

some improvement, she was still experiencing six to seven migraines per month with some lasting up to three days in length [*Id.* (citing Tr. 1242)]. Plaintiff argues these facts should have rendered her "indisputably disable[ed]," particularly because the Vocational Expert testified at the hearing that such a level of absenteeism or time off task behavior—as she claims would result from migraine headaches—would preclude competitive employment [*Id.* at 11–12 (citing Tr. 56–57)].

Plaintiff alleges the ALJ completely disregarded the severity of these migraine-related impairments and how they limit her work-related functioning. She notes that the ALJ acknowledged her reports of daily headaches, specifically ten severe headaches per month that were eventually reduced to six to seven per month following her Botox treatment, but Plaintiff takes issue with the ALJ finding that, "[i]n all, while there is some evidence of non-epileptic seizures and migraines, the evidence is not entirely consistent with the alleged frequency and severity" [*Id.* at 12 (quoting Tr. 17)]. She claims that the ALJ failed to provide any basis or citations to the record to support her conclusion and further that the ALJ mischaracterized the effectiveness of her Botox treatment because, even if it was helpful to some extent, the record indicated she still had six to seven migraines per month [*Id.* at 12–13].

In addition to her migraine-related impairments, Plaintiff alleges the ALJ largely ignored the limiting effects of her seizure episodes aside from providing some basic seizure precautions in the final RFC [*Id.* at 13 (citing Tr. 15, 18–19)]. She notes that the ALJ seemingly found these seizure episodes were not very significant or disabling because they were psychogenic and not epileptic in nature but argues that the disabling effects of her seizure episodes should not be discounted based on that fact [*Id.* at 13–14]. She notes that she testified to keeping a seizure log showing that she had five seizures in May 2020, five in June 2020, and two through the hearing

8

date in mid-July 2020 [*Id.* at 14 (citing Tr. 48)].[2]  She claims the ALJ erred by failing to exhibit or consider this evidence or otherwise address it in her decision because the Vocational Expert testified that her seizure episodes would be disabling [*Id.* (citing Tr. 56–57)].[3]

The Commissioner responds that Plaintiff's arguments regarding her migraines and seizures lack merit because the ALJ considered and rejected many of the same complaints and evidence Plaintiff refers to in her brief [Doc. 21 p.10].  The Commissioner argues that Plaintiff has not demonstrated through specific evidence from the record that the ALJ's decision lacks the support of substantial evidence [*Id.*].  For the reasons below, the Court finds that the ALJ's decision is supported by substantial evidence.

The SSA employs a two-step process when evaluating the work-related effects of a claimant's impairments.  *See* Social Security Ruling 16-3p, 2017 WL 5180304, *3–4 (S.S.A. Oct. 25, 2017) (effective Mar. 28, 2016).  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  *Id.* at *3.  Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ."  *Id.*  Social Security Ruling 16-3p "recognize[s] that some individuals may experience symptoms differently and may be limited by

---

[2]      Plaintiff states this seizure log was submitted to her electronic file exhibit file on August 13, 2020, but the ALJ failed to exhibit it or add it to her exhibit file and exhibit list [*Id.* (citing Tr. 23; Doc. 18-1)].  Instead, this evidence was resubmitted to the Appeals Council, who added it to her exhibit file [*Id.* (citing Tr. 4, 312)].

[3]      The Court has considered Plaintiff's argument concerning the ALJ's consideration—or lack thereof—of her seizure log.  The Court finds this to be harmless error at most because, in her decision, the ALJ specifically cited the exact same number of seizures that Plaintiff reported in her log [Tr. 16, 312].

symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id.* at *4. For that reason, the ALJ must consider a claimant's subjective complaints about the severity and limiting effects of his or her impairments.

A claimant's subjective complaints are but one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the plaintiff's symptoms, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). In addition,

> [t]he social security regulations establish a two-step process for evaluating pain . . . . In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.

*Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

10

The Social Security Administration has clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." SSR 16-3p, 2017 WL 5180304, at *2. When evaluating a claimant's subjective complaints, the SSA "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p; *see also Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020), *report and recommendation adopted sub nom.,* No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (discussing SSR 16-3p).

The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain. Those factors are:

> (i)   the claimant's daily activities;
>
> (ii)   the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii)   precipitating and aggravating factors;
>
> (iv)   the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;
>
> (v)   treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;
>
> (vi)   any measures the claimant takes or has taken to relieve the pain or other symptoms; and
>
> (vii)   other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529, 416.929.  The ALJ's decision need not, however, contain discussion and citations as to every possible factor to be sufficiently specific.  *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination as to a claimant's credibility regarding statements concerning his or her symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record."  *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)); *see also Ulman v. Comm'r of Soc. Sec*., 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.").

Social Security Ruling 19-4p provides the specific criteria for establishing primary headache disorder as a medically determinable impairment ("MDI"), including "diagnosis from an [acceptable medical source ("AMS")]"; "observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an AMS"; "[r]emarkable or unremarkable findings on laboratory tests"; and the claimant's "response to treatment."  2019 WL 4169635, *6 (S.S.A. Aug. 26, 2019).  Social Security Ruling 19-4p expressly states that while the SSA will consider these factors, it "will not establish the existence of [an MDI] based *only* on a diagnosis or a statement of symptoms."  *Id.* (emphasis added).  For claimants like Plaintiff with "severe" headaches, "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC."  *Id.* at *8.

As noted by the Commissioner, there is no corresponding policy statement from the SSA regarding psychogenic seizures like those Plaintiff experiences [Doc. 21 p. 11–12].  The

regulations do, however, indicate that they are to be considered a *mental* disorder rather than epileptic or physical. *See, e.g.*, C.F.R. pt. 404, subpt. P, app. 1, § 11.00H(1) (stating that when assessing the listings at step three, "psychogenic nonepileptic seizures and psuedoseizures are not epileptic seizures for the purpose of 11.02. We evaluate psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00"); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00B(6) (somatic disorders may include pseudoseizures). In the case of psychogenic seizures, the ALJ is to focus on the extent to which the disorder affected the claimant's ability to concentrate, persist, maintain pace, and perform with work-related limitations. *See, e.g.*, *Vendeville v. Comm'r of Soc. Sec.*, No. 1:20-cv-887, 2021 WL 6494784, at *3 (W.D. Mich. Dec. 29, 2021), *report and recommendation adopted*, No. 1:20-cv-887, 2022 WL 124045 (W.D. Mich. Jan. 13, 2022) (stating that pseudoseizures may constitute a serious impairment, but the ALJ appropriately determined the record did not support such serious limits on claimant's ability to maintain concentration, persistence, pace, or attendance); *Farmer v. Comm'r of Soc. Sec.*, No. 2:19-cv-2000, 2020 WL 548327, at *7–9 (S.D. Ohio Feb. 4, 2020), *report and recommendation adopted*, No. 2:19-cv-2000, 2020 WL 1482319 (S.D. Ohio Mar. 27, 2020) (claimant's impairments included, among other things, psychogenic seizures, and ALJ appropriately relied on factors under SSR 16-3p for credibility findings as to claimant's subjective complaints).

In this case, the ALJ found,

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the medical evidence.

[Tr. 16]. To support this conclusion, the ALJ noted the following facts from the record:

As to seizures and headaches, a neurology visit in March 2019 noted intermittent headaches with dizziness, phonophobia, seizures, and a visual change. However, [Plaintiff] also reported that she was good after taking a deep breath, and there was no loss of consciousness or confusion. While she also had migraines, she did not try any supplements previously given because she did not need to. Her headaches had been better overall. A neurologic examination was normal except to note a tremor in the arms. Her medication was changed (Exhibit 13F/23-27). In May 2019, the claimant reported having one spell per week, finding herself on the floor with time lapses. Migraine supplements did not help. An examination was unchanged. Her medication was again changed (Exhibit 13F/30-33).

In August 2019, the claimant saw an epilepsy specialist. She reported two types of seizures, one of which was a month ago and the other of which was a few weeks ago. She also reported migraines (Exhibit 21F/9-13). A seven-day EEG in August 2019 was normal in waking, drowsiness, and sleep, and the interpretation was that the episodes were non-epileptic and probably psychogenic in nature (Exhibit 20F/5).

She returned to her neurologist in January 2020. She reported having one spell every two weeks. An examination was unchanged (Exhibit 13F/36-39). She received a Botox injection in February 2020 for her migraines. At that time, she reported having headaches every day in a month, with ten severe headaches per month (Exhibit 13F/41-43). Botox reduced the frequency of headaches to six to seven per month, although some lasted three days. An examination was again unchanged (Exhibit 13F/49-52). She received another Botox injection in May 2020 (Exhibit 18F/15).

[*Id.* at 16–17]. Based on these facts, the ALJ determined that "while there is some evidence of non-epileptic seizures and migraines, the evidence is not entirely consistent with the alleged frequency and severity," and the evidence supported "a limitation to a light exertional level with postural limitations and environmental limitations," as noted in the final RFC [*Id.* at 17].

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff's statements about the severity and frequency of her symptoms were inconsistent with the record.

14

As to Plaintiff's headaches, the ALJ noted the lack of objective evidence to support her assertion of severe migraines. Specifically, the ALJ noted her March 2019 neurologic examination was normal and both of her follow-up examinations in May 2019 and January 2020 were "unchanged." This lack of objective evidence of severe migraines was an appropriate factor for the ALJ to consider in finding that Plaintiff's headaches did not limit her to the extent she alleged. *See, e.g.*, *Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) ("[T]he lack of objective evidence substantiating the alleged disabling headaches is what precludes the allowance of disability benefits . . . ."); *Echols v. Comm'r of Soc. Sec.* No. 18-cv-12386, 2019 WL 3852528, at *4 (E.D. Mich. July 26, 2019), *report and recommendation adopted*, 2019 WL 3842885 (E.D. Mich. Aug. 15, 2019) ("ALJ's reliance on a lack of objective medical evidence to discount the severity or existence of a claimant's allegedly disabling migraine headaches is not erroneous.") (citing *Long*). Additionally, the ALJ properly noted that Plaintiff's symptoms improved with treatment, even if they were not completely eliminated [Tr. 17, 1243, 1513]. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v), 416.929(c)(3)(iv)–(v) (directing consideration of the effect of a claimant's medication and treatment when considering the severity of alleged symptoms). Thus, the ALJ did not err in making her credibility determination.

As to her psychogenic seizure episodes, the Court finds it was also appropriate for the ALJ to conclude that they did not cause work-related limitations to the extent Plaintiff alleged. *See Vendeville*, 2021 WL 6494784, at *3 (finding that the record did not support such serious limits on claimant's ability to maintain concentration, persistence, pace, or attendance). As noted above, the ALJ is directed to assess psychogenic seizures, like those experienced by Plaintiff, using the analytical framework for mental impairments. *See id.* That framework requires the ALJ to assess Plaintiff's ability to function in four broad functional areas: (1) understanding, remembering, or

15

applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Each of these areas is rated via a five-point scale: none, mild, moderate, marked, and extreme, with the last point representing a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

While Plaintiff does not frame her argument in terms of this mental-impairment framework, the Court nevertheless finds the ALJ's assessment of her mental limitations was appropriate as the ALJ extensively reviewed the record and addressed all four of the functional areas[Tr. 13–14]. Specifically, the ALJ found she had only a mild limitation in understanding, remembering, or applying information [*Id.* at 14]. The ALJ noted that she did not report having any problems with memory, understanding, or following instructions [*Id.* (citing Tr. 270)]. Additionally, mental status examinations generally did not reveal problems in this area of functioning—or any of the others for that matter [*Id.*]. The ALJ found she had a moderate limitation in interacting with others, and the ALJ specifically noted, among other things, that she reported having no problems getting along with others and that she could shop but could not go out alone [*Id.*]. As to concentrating, persisting, or maintaining pace, the ALJ found Plaintiff had only a moderate limitation [*Id.*]. Again, the ALJ noted she reported having no problems with completing tasks, concentration, and following instructions; she was able to pay attention for twenty minutes; and although she said she did not finish what she started, she listed reading and doing puzzles as daily activities [*Id.*]. Finally, the ALJ found Plaintiff had only a moderate limitation in adaptation and managing herself [*Id.* at 15]. She reported having no issues with personal care, even though she did not bathe every day; she could prepare her own meals; and she

16

could wash clothes [*Id.*]. In light of the ALJ's thorough analysis of all four functional areas, the Court finds the ALJ appropriately evaluated Plaintiff's psychogenic seizures.

In sum, the ALJ properly evaluated Plaintiff's statements about the severity and frequency of both her migraines and psychogenic seizures. While Plaintiff cites to additional parts of the record and asks the Court to interpret the evidence differently, the Court finds the ALJ's determination was well within her "zone of choice." *Blakley*, 581 F.3d at 407. Accordingly, the Court finds that substantial evidence supports the ALJ's determination of the severity, frequency, and disabling effects of Plaintiff's subjective complaints and remand is not warranted on this basis.

**B.     The ALJ's Consideration of Plaintiff's Obesity**

Plaintiff next argues her case should be reversed or remanded because the ALJ failed to adequately evaluate her obesity and its exacerbating effects on her other impairments. She notes that, pursuant to Social Security Ruling 19-2p, "the combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" [Doc. 18 pp. 15–16 (citing SSR 19-2p, 2019 WL 2374244 (S.S.A. May 20, 2019))]. Plaintiff contends that the ALJ failed to provide any analysis or findings pertaining to her obesity in the decision and that the failure to so constitutes error because it is likely her obesity would have affected her other impairments [*Id.* at 17].

Plaintiff contends the record is replete with evidence documenting her obesity. For example, she testified at the hearing to being 5'7" and 234 pounds, which was an increase from her prior weight of 180 pounds [*Id.* at 16 (citing Tr. 52–53)]. She also points to her testimony that she had gained this weight over the previous year, she had been less active, and she did not get out much anymore [*Id.* (citing same)]. Plaintiff says the medical evidence confirms this weight gain and obesity, as she was 5'7" and 222 pounds in May 2020, equating to a body-mass index ("BMI")

17

of 34.8, which is over the threshold for obesity (BMI 30) [*Id.* (citing Tr. 1507)]. Records from July 2020 indicate she weighed 234 pounds and had a BMI of 36.65 pounds, which is consistent with her hearing testimony [*Id.* (citing Tr. 52, 1542)]. Plaintiff states her treating physicians also reported that she was overweight in treatment notes and that her level of obesity had been consistently worsening [*Id.* at 17 (citing Tr. 1438, 1445, 1450, 1456, 1462, 1473, 1542)]. Plaintiff alleges that, despite the evidence above, the ALJ failed to evaluate or even mention her obesity and SSR 19-2p in the decision [*Id.* at 17].

Plaintiff states the Sixth Circuit has previously referred to *Skarbek v. Barnhart*, 390 F.3d 500 (7th Cir. 2004) to suggest that an ALJ meets her obligation to consider obesity if she credits an expert's report that considered that impairment [*Id.* at 17 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408 (6th Cir. 2006))]. However, she contends that principle is inapplicable here because neither of the reviewing State Agency physicians nor the ALJ considered her obesity to any extent [*Id.* at 18]. She asserts the ALJ's failure to mention SSR 19-2p or otherwise address her obesity highlights the flaws in the decision and renders it unsupported by substantial evidence [*Id.*].

The Commissioner contends Plaintiff's argument has no merit because there is no evidence of any obesity-related limitations in the record, and she has thus failed to show how the ALJ's RFC finding lacks the support of substantial evidence [Doc. 20, p. 19]. The Court finds that while it may have been prudent for the ALJ to discuss Plaintiff's obesity, at most the ALJ's decision not to do so constitutes harmless error.

Social Security Ruling 19-2p[4] requires an ALJ to "consider the limiting effects of obesity

---

[4]      In SSR 19-2p, the SSA stated it would "apply [SSR 19-2p] to new applications filed on or after the applicable date of the SSR *and* to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in *any* case in which we make a determination or decision." SSR 19-2p, 2019 WL 2374244, at *5 n.14 (emphasis added). While

18

when assessing a person's RFC." 2019 WL 261798, at *4. The Ruling provides that the agency will establish obesity as an MDI by considering objective medical evidence from an AMS; however, the SSA "will not use a diagnosis or a statement of symptoms to establish the existence of an MDI." *Id.* at *3. The Ruling further notes that "the combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and requires an ALJ to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." *Id.* "SSR 19-2p only requires that obesity be considered and that the conclusion reached regarding its effects be explained." *Montagna*, 2022 WL 565601, at *4. Ultimately, "[a]n ALJ's explicit discussion of the plaintiff's obesity indicates sufficient consideration of [her] obesity." *Swafford v. Berryhill*, No. 1:18-CV-5, 2019 WL 1332368, at *3 (E.D. Tenn. Mar. 25, 2019) (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010)). "Where a plaintiff disagrees that the analysis of obesity is adequate, they must further meet the 'burden of showing specifically how [their] obesity, in combination with other impairments, limited [their] ability to a degree inconsistent with the ALJ's RFC.'" *Montagna*, 2022 WL 565601, at *3 (quoting *Lumpkin*, 2021 WL 5828692, at *7).

In this case, Plaintiff did not initially list obesity as a condition limiting her ability to work [Tr. 210]. Nevertheless, she testified at the hearing that she had gone from being 5'7" and

---

Plaintiff's initial application was filed before May 20, 2019, her claim was still pending as of May 20, 2019, and ultimately was not decided until August 25, 2020 [Tr. 10]. By its terms, SSR 19-2p applies to Plaintiff's case. *See Gray v. Kijakazi*, No. 4:20-CV-00575, 2021 WL 3891585, at *6 (W.D. Mo. Aug. 31, 2021) ("For one thing, SSR 02-1p does not apply to this case because it was rescinded and replaced by SSR 19-2p effective May 20, 2019, more than two months before the date of the ALJ's decision."); *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-01849, 2021 WL 5828692, at *7 (N.D. Ohio Oct. 6, 2021) ("The applicable date was May 20, 2019 and the regulation clearly directed the ALJ to apply SSR [19-2p] to all decisions involving obesity after it."); *Montagna v. Kijakazi*, No. 20-1227, 2022 WL 565601, at *3 n.1 (W.D. Tenn. Feb. 24, 2022).

19

weighing around 180 pounds to weighing roughly 234 pounds, all in the span of a year [*Id.* at 52–53, 210]. This equated to her having a BMI of approximately 34.8, which is over the obesity threshold [*Id.* at 310 ¶ 2]. Furthermore, various medical reports and treatment notes document Plaintiff's weight gain and obesity during the relevant period [*Id.* at 1437, 1438 1443, 1449, 1450 1454, 1456, 1461, 1462, 1473, 1507, 1517, 1525, 1535, 1540, 1542]. Based on these facts, the ALJ should have discussed Plaintiff's obesity within her decision.

However, even if the ALJ should have discussed Plaintiff's obesity in her decision, the Court finds remand is unwarranted because Plaintiff has failed to "provide evidence that obesity affected [her] ability to work." *Long v. Comm'r of Soc. Sec.*, No. 2:18-cv-00597, 2019 WL 3406431, at *11 (S.D. Ohio July 29, 2019) (citing *Cranfield v. Comm'r of Soc. Sec.*, 79 F. App'x 852, 857–58 (6th Cir. 2003) (concluding that even though doctor reports indicated obesity, the claimant's failure to provide evidence that her obesity affected her ability to work meant that "the ALJ and the district court had no obligation to address [her] obesity")); *see also May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *6 (N.D. Ohio June 1, 2011) (holding that an ALJ had no obligation to address a claimant's obesity when, even though the record contained a diagnosis of obesity, he did not demonstrate "functional limitations ascribed to the condition[ ]").

Moreover, SSR 19-2p provides that, when evaluating the severity of obesity, the SSA considers

> any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments. If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe. [The SSA will] find, however, that the impairment(s) is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities.

20

2019 WL 2374244, at *3. The SSA "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s) . . . . [The SSA] evaluate[s] each case based on the information in the case record." *Id.* at *4

At the hearing, the ALJ specifically asked Plaintiff whether, since the onset of her weight gain, she had been less active than she used to be [Tr. 53]. Plaintiff responded, "Oh, probably not because I don't get out that much" [*Id.*]. The ALJ did not press the issue further, and the Court finds this was reasonable in this case. Plaintiff did not explain in any extent why or how her obesity, either by itself or in combination with her other impairments, caused limitations in her ability to perform work-related activities. In her brief, Plaintiff only alludes to the *possibility* that her obesity might affect her other impairments, but this without more, is mere speculation [Doc. 18 p. 16]. She mentions no specific work activities that she is now unable to do because of her obesity, and while she states she has become less active due to her weight gain, this is directly contradicted by her hearing testimony that she was not less active than she had been prior to her weight gain [*Id.*; Tr. 53]. Plaintiff also cites to several treatment notes and other medical reports documenting her obesity, but she fails to identify, to any extent, how these specifically inhibited her ability to perform work-related activities. Plaintiff's argument that her obesity was well-documented is not sufficient to warrant remand of her case. Furthermore, she has not indicated why her obesity is inconsistent with the final RFC, which already limited her to a reduced range of light work with no more than occasional postural movements like bending and squatting [Tr. 15].

The Court finds that, even if the ALJ erred in not discussing obesity and SSR 19-2p, remand is not warranted because Plaintiff has not met her burden to produce sufficient evidence to demonstrate the existence of a disability due to her obesity, either when considered by itself or in

21

combination with her other impairments. *See Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability.") (citations omitted).

### C. The ALJ's Consideration of Plaintiff's Low Back Pain and Degenerative Disc Disease

Finally, Plaintiff contends the ALJ's decision should be reversed or remanded because she failed to sufficiently account for her low back pain and severe degenerative disc disease of the lumbar spine [Doc. 18 p. 19]. She argues that the ALJ's findings relating to these impairments are inconsistent with and lack support from the record [*Id.*]. Specifically, Plaintiff takes issue with the ALJ's reliance on a March 2019 physical examination that revealed only mild tenderness and a mildly restricted range of motion, subsequent examinations that contained similar findings, the conservative treatment Plaintiff received, and the lack of diagnostic imaging from the relevant period [*Id.* (citing Tr. 931, 1456, 1468, 1539–45)].

In arguing that the ALJ's findings are inconsistent with and lack support from the record, Plaintiff points to various other parts of the record that she claims contradict the ALJ's review of the evidence. As an example, she notes that the medical evidence contains records from her pain management consultants indicating that she had received treatment for displacement of lumbar intervertebral disc; low back pain; spondylosis with myelopathy, lumbar region; lumbosacral neuritis; muscle spasms; and chronic prescription use [*Id.* (citing Tr. 916–1004, 1435–76, 1539–45)]. Plaintiff concedes that the record does not include updated imaging from the time period at issue; however, she notes that there is a 2012 MRI revealing a paracentral disc protrusion at L4-5 with bilateral L5 nerve root compression; right paracentric disc protrusion at L5-S1 with bilateral S1 nerve root compression; and moderately severe canal stenosis at L4-5 and L5-S1 related to the

22

disc protrusion [*Id.* at 19–20 (citing Tr. 917)]. Plaintiff states that her lumbar spine impairments are degenerative in nature and that the evidence reveals she continued to have severe lumbar spine impairments throughout the time period at issue [*Id.* at 20 (citing Tr. 916–1004, 1435–76, 1539–45)]. She also points to various other pain management treatment records which she claims constitute objective findings of severe spine impairments [*Id.*].

Here as well, Plaintiff takes issue with the ALJ's alleged failure to properly consider her obesity, as she asserts that it likely exacerbated her low back pain and other physical impairments [*Id.* at 20–21]. She also contends that the ALJ failed to address or resolve the inconsistencies between her findings related to her lumbar spine impairments and the opinions of the state agency physicians who found that her lumbar spine impairment was severe [*Id.* at 22 (citing Tr. 77, 108)].

In response, the Commissioner notes that the ALJ found Plaintiff's back pain was a non-severe impairment at step two [Doc. 21 p. 21 (citing Tr. 13)]. The Commissioner goes on to argue that, in any case, the ALJ stated that even though she found the impairment was non-severe, she still considered all of Plaintiff's MDIs—severe and non-severe—when crafting the final RFC [*Id.*]. The Commissioner submits that the SSA's rules and caselaw did not require the ALJ to do anything further in her decision [*Id.*]. For the following reasons, the Court finds the ALJ did not err in considering Plaintiff's low back pain.

Plaintiff's assertion that the ALJ improperly determined her low back pain was a non-severe impairment is inapposite because the ALJ found she had seven other "severe" impairments [Tr. 13]. The Sixth Circuit has instructed that if an individual has at least one severe impairment, then the ALJ is required to assess how much work the individual can still do. *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (citing 20 C.F.R. § 404.1520(a)(4)(iv)). "When making that assessment, 'the ALJ must consider limitations and

23

restrictions imposed by *all* of [the] individual's impairments, even those that are *not* severe.'" *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007)) (emphasis added). Thus, "as long as the ALJ considers all of the individual's impairments, the 'failure to find additional severe impairments . . . does not constitute reversible error.'" *Id.* (quoting *Fisk*, 253 F. App'x at 583). The Commissioner correctly notes that if a plaintiff has at least one severe impairment, then it is "legally irrelevant" that other impairments could have also been found to be severe when those impairments were considered in combination at later steps. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). To that end, the Sixth Circuit has previously instructed that an ALJ's thorough review of the record along with a statement that all impairments were considered in combination sufficiently demonstrates that all impairments were properly considered in combination. *Id.* at 851.

Here, the ALJ found Plaintiff had seven "severe" impairments, including: depression, anxiety, psychogenic seizure disorder, bipolar disorder, alcohol use disorder, and migraines [Tr. 13]. The ALJ noted that, pursuant to SSR 96-8p and the regulations, she "must consider all of the claimant's impairments, including impairments that are not severe" when formulating the RFC [*Id.* at 12]. The ALJ also stated her findings were based on her "consideration of the *entire* record" and that she considered all of Plaintiff's medically determinable impairments, including those that were not severe, when assessing her RFC [*Id.* at 13 (emphasis added)]. Remand is therefore not warranted for the ALJ to identify any additional severe impairments, as such a failure would be "legally irrelevant" under Sixth Circuit precedent. *See Emard*, 953 F.3d at 852.

Moreover, the Court finds the ALJ adequately considered Plaintiff's alleged low back pain and degenerative disc disease despite finding it to be a non-severe impairment. The ALJ stated that, in regard to Plaintiff's back pain, "a physical examination in March 2019 noted only mild

24

tenderness and a mildly restricted range of motion" [Tr. 13 (citing Tr. 931)]. Additionally, the ALJ noted that "[s]ubsequent examinations were similar, and treatment was conservative, given the lack of imaging from the relevant period" [*Id.* citing [Tr. 1456, 1468, 1539–45)]. When evaluating Plaintiff's alleged low back pain and degenerative disc disease and her subjective complaints about their severity—in addition to her other MDIs—the ALJ properly relied on the objective medical evidence, Plaintiff's treatment history, and the lack of imaging evidence from the relevant period. *See supra* pp. 10–12 (discussing the framework for evaluating symptoms and a claimant's subjective complaints about their severity). The Court finds this discussion was sufficient for the ALJ's finding that Plaintiff's "[MDIs] could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" [*Id.* at 16].

Furthermore, Plaintiff's argument that the ALJ failed to specifically attribute any of the RFC limitations to her low back pain is unconvincing. It is well settled that the "ALJ need not specifically discuss all nonsevere impairments in the [RFC] assessment when the ALJ makes clear that her decision is controlled by SSR 96-9p[,]" which is precisely what the ALJ did here. *Emard*, 953 F.3d at 851–52. Plaintiff's assertion that the ALJ failed by not adopting or discussing the prior administrative medical findings, which indicated she had a severe back impairment, is also not persuasive. A finding of severe impairment is an issue reserved specifically to the Commissioner. *See* 20 C.F.R. §§ 404.1520b(c)(3)(ii), 416.920b(c)(3)(ii) (statements about whether a claimant has a severe impairment are "inherently neither valuable nor persuasive" and the ALJ "will not provide any analysis about how [he] considered such evidence in [his] determination or decision, even

under § 404.1520c [and § 416.920c].").  In any case, the ALJ found that the prior administrative medical findings were only "somewhat persuasive" [Tr. 18].

The Court has considered Plaintiff's argument, but ultimately it appears she is inviting the reweighing of the evidence in this case, and such an argument has no merit because "the court will not reweigh the evidence considered by the ALJ." *Seibert v. Comm'r of Soc. Sec.*, No. 17-13590, 2019 WL 1147066, at *2 (E.D. Mich. 2019) (citing *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013)).  Again, while the record may contain evidence that her low back pain and degenerative disc disease may have been more disabling than what the ALJ found and although Plaintiff would interpret the evidence differently, the Court finds the ALJ's determination was well within her "zone of choice." *Blakley*, 581 F.3d at 407; *see also Huizar*, 2008 WL 4499995, at *3. Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *Buxton*, 246 F.3d at 772.

Plaintiff has failed to demonstrate that the ALJ's decision lacks the support of substantial evidence in this case.  Remand of the Commissioner's final decision is not warranted in this case.

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 17**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **GRANTED**.  The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge

26